## No. 761
### BRADY et v. STAFFORD, Rec.
No. 19268. Supreme Court

On motion to certify. Dock. July 16, 1925; 3 Abs. 451.

355. **DAMAGES**—Should ruling in another state be followed by decree of Court of Appeals without modification of present Ohio rule by Supreme Court?

452. **EMPLOYER AND EMPLOYE**—Is knowledge of employe imputed to employer?

Benjamin Brady brought an action against Homer Stafford, Receiver of the A. W. Reiser & Company, in the Tuscarawas Common Pleas for wilfully, wrongfully and knowingly breaking into his coal lands and removing about 6000 tons of coal.

A verdict was rendered in Brady's favor for $400 but the Court of Appeals reversed this judgment on the ground that the verdict was excessive. It was held by the Court of Appeals that there was no proof in the record that the coal mined was mined willfully and knowingly; but that the coal was taken inadverdently, and by a Pennsylvania rule it reversed the case because Brady had not shown the value of the coal according to said rule.

The case was taken to the Supreme Court and is now pending there on a motion to certify. It is claimed that the Court of Appeals was in error when it held that no evidence was offered to show that the coal had been taken "willfully and wrongfully". The witnesses used, it is urged had been in the employ of the Reiser Co. and their knowledge may be imputed to their employers.

It is contended that if the employers did not know they were over the line into Brady's coal, in the exercise of ordinary care and diligence they should have known it, and the law charges them with knowledge of that which they should have known.

The rule in Ohio for ascertaining the amount of damages is claimed to be: "That the value of the coal when severed, less the cost of severance would be the measure of damages, in case the defendant acted in good faith, because there is in substance no difference between the rule thus stated and a rule which would fix the measure of damages at the value of the coal in place, for the obvious reason that the value of the coal in place is just equal to its value when severed less the cost of severence." Key et v. Coal Company, 58 OS. 277.

Referring to the willful taking of coal, "the damages is the value of the coal at place sold, without deduction for cost of severence and expenses." The court in that case held, "we are not disposed to question the wisdom of applying to cases of this character that severe rule of damages countenanced by the authorities where bad faith or a willful disregard of the rights of others is shown."

It is claimed that if the Ohio rule were followed Brady would be entitled to $7500. It is further contended that the jury apparently applied this rule but found from the testimony that a lesser number of tons had been taken. It is contended that the Ohio rule 'in 58 OS. should be respected by the lower courts and if the Pennsylvania rule in assessing damages on an acreage basis, should be adopted, then the Supreme Court should be the first court to modify the present Ohio rule.

**Attorneys**—Mitchell &Mitchell for Brady; H. I. N. Stafford and R. N. Wilkin for Stafford, Rec.; all of New Philadelphia.

## No. 762
### MACON v. STATE
No. 19302. Supreme Court

On motion to file petition in error. Dock. July 30, 1925. 3 Abs. 482.

225. **CHARGE TO JURY**—If it instructs jury that if defendant did not shoot in self defense then malice should be inferred; is it prejudicial to the extent of reversible error?

Talton Macon was convicted of the charge of murder in the second degree in the Hamilton Common Pleas. Error proceedings were instituted and on hearing the Court of Appeals affirmed the judgment and sentence.

As was shown by the evidence, Macon was 29 years of age and was employed as a brick-layer upon his discharge from the army. Charles Allen, the deceased, and Macon were friends of over ten years standing. Upon the date of the homicide Macon had returned from work because of his inability to lay bricks due to the intense cold. He proceeded over to his mother's house to repair a frozen water pipe and perceived Allen there to whom he gave a friendly greeting.

Allen then offered to sell Macon a gun, but which Macon refused to purchase because it had no magazine. Macon, who had the gun in his hand, returned it to Allen, and in the exchange it exploded whereby Allen was shot. Macon became frightened and rushed from the scene exclaiming to a family which lived not far that he and Allen were friends and he had no intention of harming him. Macon, upon being advised of Allen's death, left Cincinnati and obtained work in Cleveland, where he was apprehended, arrested and returned to Cincinnati.

A motion was filed in the Supreme Court for leave to file a petition in error. Upon said motion it is contended by Macon that the court erred in its charge to the jury and that there were errors of law in the admission and rejection of evidence at the trial.

It is claimed that the Court in its charges in regards to manslaughter laid down two different and inconsistent rules. That, on one hand, the jury were told that they might find Macon guilty of manslaughter though they find the homicide was committed either with or without malice and, on the other hand, under the same set of facts and like circumstances they were charged that before they could return a verdict of manslaughter they must find beyond a reasonable doubt that "the gun was pointed, aimed or discharged without malice."

It is claimed that court's charge, "If you find therefore, that Charles Allen was killed and it was not done in self defense, but in a sudden passion or heat of blood, then malice may be inferred," was erroneous and prejudicial because the jury were instructed that if the killing was not done in self defense, malice should be inferred.

It is contended that the attitude of the court during the course of the trial as to the admission and rejection of certain evidence, was most favorable to the state and prejudicial to Macon. It is claimed that the state in failing to get a privileged communication between Macon and his wife to the jury, attempted to argue and infer the guilt of Macon because of his counsel's objection to such questions for lawful reasons.

**Attorneys**—Froome Morris and M. Froome Barbour, for Macon; C. S. Bell and R. A. Tooker for State; all of Cincinnati.